Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for the Plaintiffs,*
*Charlene Cheli, Dennis Maurer, and*
*The Independence Project, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHARLENE CHELI, an Individual, DENNIS MAURER, an Individual, and THE INDEPENDENCE PROJECT, INC., a New Jersey Non-Profit Corporation<br><br>Plaintiffs,<br><br>vs.<br><br>HERITAGE'S DAIRY STORES, INC., a New Jersey Corporation,<br><br>Defendant. | Case No.  1:25-cv-12738<br><br>**COMPLAINT** |

## Introduction

Plaintiffs, CHARLENE CHELI, an individual, DENNIS MAURER, an individual, and THE INDEPENDENCE PROJECT, INC, a New Jersey Non-Profit Corporation ("Plaintiffs"), on their own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sue the Defendant, HERITAGE'S DAIRY STORES, INC., a New Jersey Corporation ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs

1

pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, CHARLENE CHELI, is an individual over eighteen years of age and is otherwise sui juris.

2. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris.

3. Plaintiff, THE INDEPENDENCE PROJECT, INC., ("The Independence Project") is a New Jersey non-profit organization whose members include disabled individuals residing across the country.

4. Defendant, HERITAGE'S DAIRY STORES, INC., owns and/or operates places of public accommodation, in this instance a chain of convenience stores, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

5. Defendant's properties are a chain of convenience stores ("Properties"), known as Heritage's, located throughout southern New Jersey at the following locations:

   a. 999 Grove Road, West Deptford, NJ 08086

   b. 703 N. Broad Street, Woodbury, NJ 08096

   c. 382 Jessup Road, West Deptford, NJ 08086

   d. 820 E. Broad Street, Gibbstown, NJ 08027

   e. 620 E. Clements Bridge Road, Runnemede, NJ 08078

   f. 11 Tansboro Road, Berlin, NJ 08009

   g. 505 N. Main Street, Glassboro, NJ 08028

h. 319 Glassboro Road, Woodbury Heights, NJ 08097

i. 525 Mullica Hill Road, Glassboro, NJ 08062

j. 811 S. Black Horse Pike, Blackwood, NJ 08012

k. 495 Bridgeton Pike, Mantua, NJ 08051

l. 409 N. Delsea Drive, Clayton, NJ 08312

m. 1315 Cooper Street, Deptford, NJ 08096

n. 507 Auburn Road, Swedesboro, NJ 08085

o. 710 Delaware Street, West Deptford, NJ 08086

p. 211 Hessian Street, West Deptford, NJ 08096

q. 743 Billings Avenue, Paulsboro, NJ 08066

r. 105 Eldridge Avenue, Williamstown, NJ 08094

s. 660 Mantua Boulevard, Sewell, NJ 08080

t. 1504 Hurffville Road, Deptford, NJ 08096

u. 283 Kings Highway, Clarksboro, 08020

v. 334 Delsea Drive, Sewell, NJ 08080

w. 500 Lambs Road, Pitman, NJ 08071

x. 533 Blue Bell Road, Williamstown, NJ 08094

y. 199 East Avenue, Woodstown, NJ 08098

z. 37 N. Broadway, Gloucester City, NJ 08030

aa. 203 N Main Street, Mullica Hill, NJ 08062

bb. 501 Beckett Road, Logan Township, NJ 08085

cc. 702 Hessian Avenue, National Park, NJ 08063

dd. 292 U.S. Hwy 40, Elmer, NJ 08318

  ee. 1701 Williamstown Erial Road, Sicklerville, NJ 08081

  ff. 4200 S. Lincoln Avenue, Vineland, NJ 08361

6. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the Properties situs. The Defendant's properties are located in and does business within this judicial district.

7. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

8. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

9. The Defendant owns, leases, leases to, and/or operates places of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

10. Plaintiff, CHARLENE CHELI, is an individual with disabilities - as defined by and pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires, at all times, the use of a wheelchair to ambulate. Ms. Cheli resides at 1380 Washington Avenue, Vineland, NJ 08361.

11. Plaintiff, DENNIS MAURER, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

substantially limits many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

12.    Plaintiff, THE INDEPENDENCE PROJECT, INC., is a non-profit whose mission is to facilitate communication among disabled persons, to empower its members through information and awareness, and, ultimately, to ensure equal enjoyment and unfettered access to all places of public accommodation.

## Factual Background

13.    The Plaintiffs are staunch advocates of the ADA. Since becoming mobility impaired (and having to fully rely on the use of their wheelchairs to ambulate) they have dedicated their lives to the elimination of accessibility discrimination so that they, and others like them, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

14.    Mr. Maurer is the president, and Ms. Cheli is a member of The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

15.    The Plaintiffs encounter architectural barriers at many of the places that they visit. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs.

16.    The barriers to access that the Plaintiffs experience at differing places of public

---

[4] as defined by 28 CFR § 36.105(b)(1-2)

accommodation are often similar in nature. For example, they are repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. The Plaintiffs have become frustrated and disheartened by the repetitiveness of the complaints they have been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, she now finds her redress through the ADA; as Congress intended.

17. They Plaintiffs have visited the various Properties across the southern New Jersey region on numerous occasions over the years.

18. They Plaintiffs have visited the Properties as bone fide patrons with the intent to avail themselves of the goods and services offered to the public within but encountered a litany of ADA violations across the many locations – both in architecture and policy.

19. The Plaintiffs shall return to the Properties not only as patrons but also to monitor any progress made with to respect to ADA compliance – they sincerely hopes that those return visits are not made in vain.

20. The Plaintiffs are life-long residents who frequently travel around southern New Jersey and the surrounding areas of the Delaware Valley to visit friends and family, for shopping and entertainment purposes, and to conduct business.

21. In addition, as members of The Independence Project, the Plaintiffs inspect properties that were previously in violation of the ADA and subject to litigation by the organization and/or its members. Such properties are inspected by the Plaintiffs, or other members (based on geography), in order to determine if such have been made accessible and continue to remain in compliance; it is their normal practice to inspect the properties under their purview at least twice per year. The Plaintiffs also inspect properties that they visit as patrons; regardless of previous litigation.

22. They Plaintiffs have personally encountered and physically experienced exposure to architectural barriers and otherwise harmful conditions that have endangered their safety, caused them inconvenience, and have caused them to suffer dignitary harm at the Properties.

23. The ADA has been law for over thirty (30) years and yet the Properties remain non-compliant. Thus, the Plaintiffs have actual notice and reasonable grounds to believe that they will continue to be subjected to discrimination across the various locations by the Defendant.

24. They Plaintiffs have a realistic, credible, existing, and continuing threat of discrimination caused by the Defendant's non-compliance with the ADA as described but not necessarily limited to the barriers they have personally experienced at the Heritage's locations as described in Paragraph 32.

25. Following any resolution of this matter Plaintiffs will ensure that the Defendant undertakes the remedial work that is required to cure existing violations at each location, under the appropriate standard, and in compliance with the ADA.

### COUNT I
### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

26. Plaintiffs reallege and incorporate by reference all of the allegations contained in each of the preceding paragraphs.

27. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[5]

---

[5] 42 U.S.C. § 12101(a)(1)

28. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[6]

29. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [7]

30. The Defendant has discriminated against the Plaintiffs, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Properties, as prohibited by the ADA.

31. A preliminary inspection of the Properties has shown that violations of the ADA exist. Those inspections, performed by the Plaintiffs' expert, further revealed that the remediation of all violations/barriers listed in Paragraph 32 are both technically feasible and readily achievable. Plaintiffs' expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the southern New Jersey area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

32. The following are common architectural barriers and violations of the ADA that the Plaintiffs have personally encountered during numerous visits to the Properties:

**Parking and Exterior Accessible Route**

    a. The designated accessible parking spaces located at the Properties are not properly

---

[6] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)
[7] 42 U.S.C. § 12188(a)(1)

maintained, contain faded striping, contain excessive sloping beyond the allowable limit of 2.0%, and contain abrupt changes of level; in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. These barriers have presented the Plaintiffs with a tipping hazard and could also cause damage to their wheelchairs; to avoid these obstacles they have been forced to park away from the stores in a flat, maintained area, travel around obstacles, and then through the vehicular area of the parking lot in order to reach the facility.

b. The accessible parking at the Properties fails to provide compliant accessible routes which lead from the accessible parking areas to the entrances and/or the accessible curb ramps. The routes are impeded by sloping, cross-sloping, and abrupt changes of level; a violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These conditions have presented the Plaintiffs with a tipping hazard which could cause a injury from a fall and damage to their wheelchairs.

c. The exterior accessible routes throughout the Properties are impeded by excessive cross-sloping and abrupt changes in level; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. The Plaintiffs have been impeded by these conditions which present a tipping hazard and could cause damage to their wheelchairs.

d. The Properties fail to provide the requisite number of compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van-accessible access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, the Plaintiffs have been forced to park away from the stores as detailed above so that they could freely access their vehicles without the fear of becoming blocked out by adjacent vehicles – preventing them from accessing their vehicle

ramps.

e. Heritage's fails to provide continuous accessible routes throughout the entirety of each of the Properties; the existing routes contain excessive sloping, cross-sloping, and abrupt changes of level. These architectural barriers violate the ADAAG and Section 402 of the 2010 ADA Standards and have prevented the Plaintiffs from travelling from one section of the Properties to another via their wheelchairs.

f. The Properties fail to provide compliant routes to the adjacent streets, sidewalks, and/or public transportation routes. The Plaintiffs have been precluded from accessing the Properties from these points of entry due to the lack of an accessible route; a discriminatory omission which limits their options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Payment counters/work surfaces throughout the Heritage's stores are mounted beyond the Plaintiffs' reach; a violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. These barriers have prevented them from freely accessing these elements within the stores.

h. Heritage's fails to provide the requisite number of accessible dining tables (where tables are provided); in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables, the Plaintiffs could not dine comfortably.

i. The Plaintiffs cannot access the Heritage's store entrances without assistance due to abrupt changes of level, improper door hardware, and excessive sloping at the base of the doors which could damage their wheelchairs and/or cause a tip and fall; violations of the ADAAG and Section 404 of the 2010 ADA Standards.

**Restrooms**

 j. The restrooms within Heritage's (where publicly available) are inaccessible to the Plaintiffs. The barriers to access include incorrect signage, inaccessible water closets that lack proper controls, and an overall lack of wheelchair maneuvering space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented the Plaintiffs from freely using the restrooms.

33. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[8]

34. The discriminatory violations described in Paragraph 32 may not be an exhaustive list of the ADA violations that exist at the Properties, but they are the result of preliminary inspections and include those personally experienced by the Plaintiffs.

35. Given the violations discovered and listed herein the Plaintiffs allege, on information and belief, that there are other violations/barriers at the Properties which relate to their disabilities. Thus, the Plaintiffs require thorough inspection of each of the Properties in order to photograph and measure the architectural barriers which exist thereupon in violation of the ADA. Once said

---

[8] 28 CFR § 36.104

inspections have been completed, the Plaintiffs may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[9]

36. Plaintiffs, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

37. Defendant has discriminated against the Plaintiffs, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

38. Defendant continues to discriminate against the Plaintiffs, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[10]

39. Defendant continues to discriminate against the Plaintiffs, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[11]

40. Defendant continues to discriminate against the Plaintiffs, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other

---

[9] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them)

[10] 42 U.S.C. § 12181(b)(2)(A)(iv)

[11] 42 U.S.C. § 12181(b)(2)(A)(ii)

individuals because of the absence of auxiliary aids and services.[12]

41. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[13] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

42. Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty is continuous and ongoing – regardless of when the facility was designed and constructed for first occupancy.

43. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Properties after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Properties are readily accessible to and usable by individuals with disabilities, including individuals, like the Plaintiffs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of a facility begins after that date.[14] Discovery in this matter will reveal if and when such alterations have taken place at each of the Properties, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Properties into compliance with the ADA.

44. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element - that has not been altered - must comply with or be modified to meet. Those are defined as follows:

    a. Elements that have not been altered since on or after March 15, 2012, must comply with

---

[12] 42 U.S.C. § 12181(b)(2)(A)(iii)

[13] as defined by 28 CFR § 36.401(a)(2)

[14] 28 CFR § 36.402(a)(2)

      the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

45. Plaintiffs are not required to notify the Defendant of its violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, the Plaintiffs have found that voicing concerns to employees/management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

46. Plaintiffs are without adequate remedy at law and are suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

47. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

48. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiffs injunctive relief, including an order to require the Defendant to alter the Properties and make such readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Properties until such time as the Defendant cures all violations of the

ADA.[15]

**WHEREFORE,** Plaintiffs respectfully demand;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Properties listed herein – and those later found through discovery – within the next six months; (2) to make the Properties accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Properties – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
**Violation of New Jersey Law
Against Discrimination, N.J.S.A. 10:5-1 et seq.**

49. Plaintiffs reallege and incorporate, by reference, all of the allegations contained in each of

---

[15] 42 U.S.C. § 12188(b)(2)

the preceding paragraphs.

50. Each of the Heritage's locations is a place of public accommodation as defined by N.J.S.A 10:5-5.

51. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[16]

52. As set forth above, the Defendant has violated the LAD by denying the Plaintiffs, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Properties.

53. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, the Plaintiffs have sustained bodily injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiffs respectfully demand;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum

---

[16] Pursuant to N.J.S.A 10:5-4

   extent permitted – attorney's fees, and litigation expenses; including expert fees and costs.

e. An order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Properties – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.


Respectfully submitted on this 3rd day of July 2025,

              */s/ Jon G. Shadinger Jr.*
              Jon G. Shadinger Jr., Esq.
              Shadinger Law, LLC
              2220 N. East Avenue
              Vineland, NJ 08360
              (609) 319-5399
              js@shadingerlaw.com
              *Attorney for the Plaintiffs, Charlene Cheli, Dennis Maurer, and The Independence Project, Inc.*